UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ASBURY CARBONS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 4:10-CV-878 (CEJ) |
| ) | |
| SOUTHWEST BANK, an M&I Bank, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant's motion to dismiss Counts I, IV, V, VI, and VII of the amended complaint. Plaintiff opposes the motion, and the issues have been fully briefed.

I. **Background**

For purposes of the motion to dismiss, the following allegations of the amended complaint are taken as true:

In October 2007, plaintiff and defendant separately made loans to Jomico, LCC and Missouri Lime (collectively "borrowers"). The loans were secured by the same collateral, consisting of real and personal property owned by the borrowers. On October 19, 2007, plaintiff and defendant entered into an Intercreditor Agreement in which plaintiff agreed that its loan to the borrowers (the "Asbury Note") would be subordinate to defendant's loans (the "SWB Notes") to the borrowers up to $8 million. The Intercreditor Agreement also provided that plaintiff's written consent was required before defendant could take any action that would have the effect of increasing the borrowers' principal obligation to defendant above $8 million.

On January 26, 2009, the borrowers defaulted on the Asbury Note, and plaintiff notified defendant of the default as required by the Intercreditor Agreement. On February 3, 2009, plaintiff learned that defendant had loaned the borrowers in excess of $8 million. On that same date, defendant represented that the borrowers were current on their repayment of the SWB Notes. On February 11, 2009, defendant notified plaintiff that the borrowers were in default on the SWB Notes and issued a payment blockage notice under the Intercreditor Agreement preventing borrowers from making further payments on plaintiff's loan. Plaintiff sent letters to defendant on May 26, 2009 and August 18, 2009, notifying defendant that it was in breach of the Intercreditor Agreement and that any amounts defendant had loaned in excess of $8 million would be subordinate to the Asbury Note. Defendant, however, did not acknowledge the breach. Defendant used the payment blockage period to continue to collect additional payments from borrowers, and instructed borrowers to not pay plaintiff after the six-month payment blockage period had expired, despite the borrowers' willingness and ability to do so.

On February 8, 2010 defendant issued a second payment blockage notice after borrowers defaulted again on the SWB Notes. On that same day, defendant accelerated payment on the approximately $7.5 million outstanding principal owed by borrowers. Plaintiff claims that borrowers made payments in the amount of approximately $1 million after the February 8, 2010 default notice, but that defendant proceeded with foreclosure proceedings on the outstanding balance of its loan.

On September 22, 2010, plaintiff sought a temporary restraining order enjoining defendant's foreclosure sale of borrowers' remaining assets. After a hearing

on September 23, 2010, the motion was denied. The foreclosure sale was scheduled to take place on September 24, 2010.

## II. Legal Standard

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of the complaint. The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim. Id. A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp., 127 S. Ct. at 1974; See also id. at 1969 ("no set of facts" language in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), "has earned its retirement."). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965.

## III. Discussion

Defendant claims that Count I of the amended complaint should be dismissed for lack of subject matter jurisdiction because it fails to allege an actual case or controversy. Defendant also seeks dismissal of Counts IV, V, VI and VII for failure to state a claim upon which relief can be granted under Rule 12(b)(6), Fed.R.Civ.P.

### A. Count I: Declaratory Relief Construing Subordination Clause

In Count I of their amended complaint, plaintiff seeks a declaration construing the intercreditor agreement as providing a reduction in the amount of superior debt defendant may claim based upon their alleged breaches of the agreement. Defendant claims that plaintiff has failed to allege an actual case or controversy because even accepting plaintiff's allegations, the borrowers' remaining assets or funds from the sale of those assets, must be valued between $5.2 and $15 million for plaintiff to have a possibility of recovery. Defendant further claims that plaintiff has failed to satisfy its burden of establishing a real and reasonable apprehension of litigation based upon defendant's conduct. See Green Edge Enters. v. Rubber Mulch Etc., LLC, 509 F. Supp. 2d 814, 818 (E.D. Mo. 2007) (focusing on defendant's statements and conduct because "apprehension alone, if not inspired by defendant's actions, does not give rise to an actual controversy" Id. at 818 (quoting Trippe Mfg. Co. v. American Power Conversion Corp., 46 F.3d 624, 627 (7th Cir.1995)).

Taking plaintiff's allegations as true, the Court finds defendant's arguments unpersuasive and their cited case law distinguishable. Plaintiff has alleged that defendant committed numerous breaches of the parties' agreement and that the breaches require a repositioning of the parties' relative lien priorities. Further, unlike Agribank, FCB v. Cupples, 850 F. Supp. 780 (E.D. Ark. 1993), there is no lack of "sufficient immediacy" in determining the lien holders' relative rights. To the best of the Court's knowledge, a foreclosure sale of the secured assets has already taken place, this sale was instigated by defendant, and there are no contingent events that will affect the possibility of plaintiff's recovery.

### B. Count IV: Fraudulent Inducement

In Count IV, plaintiff claims that defendant fraudulently induced it to execute the intercreditor agreement by failing to disclose the defendant's intent to prevent borrowers from making payments on the Asbury note. Defendant argues that this allegation fails to satisfy the elements of a fraudulent inducement claim under Missouri law in light of the heightened pleading standard for fraud or mistake under Rule 9(b), Fed.R.Civ.P. Specifically, defendant claims that plaintiff did not allege that it either made a misrepresentation or owed a duty to disclose a material omission. Plaintiff, however, claims that defendant's intent to block borrowers' payment on the Asbury note was a material fact which existed at the time the parties' executed the intercreditor agreement, was known only to defendant and could not have been discovered by plaintiff.

Under Missouri law, a plaintiff must show that defendant either misrepresented a material fact or failed to disclose a material fact in light of a duty to do so. Hess v. Chase Manhattan Bank, USA, N.A., 220 S.W.3d 758, 765 (Mo. 2007). Addressing plaintiff's contentions here, the Hess court noted:

> In nondisclosure cases, a party's silence amounts to a representation where the law imposes a duty to speak. Andes, 853 S.W.2d at 943. "Whether or not a duty to disclose exists … must be determined on the facts of the particular case." Ringstreet Northcrest, Inc. v. Bisanz, 890 S.W.2d 713, 720 (Mo.App. W.D.1995). A duty to speak arises where one party has superior knowledge or information that is not reasonably available to the other. Andes, 853 S.W.2d at 943. "Silence can be an act of fraud where matters are not what they appear to be and the true state of affairs is not discoverable by ordinary diligence." Bayne v. Jenkins, 593 S.W.2d 519, 529 (Mo. banc 1980).

Id. As to the pleading standard in fraud or mistake claims, Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances

constituting fraud or mistake," but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed.R.Civ.P. Rule 9(b).

The Court finds that plaintiff has not adequately stated a cause for relief under a theory of fraudulent inducement. Although plaintiff goes to great lengths to show that defendant's alleged omission was similar to those in other cases where courts have found an adequately stated claim, Count IV is a mere reiteration of plaintiff's breach of contract, lack of good faith, and tortious interference claims. Plaintiff attempts to create a claim out of the allegation that defendant had already formed intent to commit at least one of the above wrongs at the time it entered into the parties' agreement. But this is not an instance where defendant owed plaintiff any special duty of disclosure. See Hess, 220 S.W.3d 758 (duty based upon plaintiff's relative lack of knowledge and Missouri's statutory prohibition on deceptive practices in consumer transactions). Here, plaintiff and defendant are sophisticated business entities who dealt with each other at arm's length. The Court declines to accept plaintiff's proposed abrogation of Missouri's general requirement that a claim for fraud by omission requires defendant to have owed some special duty of disclosure. See Spencer Reed Group, Inc. v. Pickett, 163 S.W.3d 570 (Mo. Ct. App. 2005) (Missouri law implies a covenant of good faith and fair dealing, but plaintiff has not alleged a breach of good faith claim and "good faith does not import into contract law the negligence principals of tort law." Id. at 574-75).

C.     Count V: Conversion

Plaintiff alleges in Count V that defendant committed the tort of conversion by improperly blocking the borrowers' installment payments on the Asbury Note. Defendant's argues that Count V should be dismissed because Missouri law does not

generally provide a cause of action for conversion of money. In response, plaintiff submits that it may assert a conversion claim because defendant exercised dominion over a right to monies that are specific and equitably traceable.

Under Missouri law, "[c]onversion is the unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's rights." Dwyer v. Unit Power, Inc., 965 S.W.2d 301, 305 (Mo. Ct. App.1998). Generally, an action for "conversion does not lie for the wrongful taking of money." K-Smith Truck Lines, Inc., v. Coffman, 770 S.W.2d 393, 398 (Mo. Ct. App.1989). The reason behind this rule is "that an ordinary debt or money cannot be described or identified as a specific chattel." Id. at 399. However, a conversion action may be maintained where "[n]otes, bills, checks, and other representatives of value" can be described or identified as specific chattel. Moore Equipment Co. v. Callen Const. Co., Inc., 299 S.W.3d 678 (Mo. Ct. App. 2009) (quoting K-Smith Truck Lines, Inc., 770 S.W.2d at 399). "[A] representative of value is itself a thing of value." Good Roads Mach. Co. v. Broadway Bank, 267 S.W. 40, 42 (Mo. Ct. App.1924). Finally, "[t]he recognized measure of damages for conversion of an identifiable check is prima facie the value of the paper converted." K-Smith, 770 S.W.2d at 399.

Here, plaintiff has alleged that it had a security interest in specific funds over which defendant improperly exercised control. Whether the Court can apply equitable tracing to identify these funds depends on whether defendant, as a transferee, took possession of plaintiff's funds outside of the "ordinary course of business." General Elec. Capital Corp. v. Union Planters Bank, N.A., 409 F.3d 1049, 1055 (8th Cir. 2005). This analysis is also inline with the Uniform Commercial Code as enacted by Missouri. Id. "A transferee of money takes the money free of a security interest unless the

transferee acts in collusion with the debtor in violating the rights of the secured party." MO. REV. STAT. § 400.9-332(a). Accepting plaintiff's allegations as true, plaintiff has adequately stated a claim for conversion of the specific payments over which plaintiff held a superior security interest and over which defendant wrongfully exercised control by directing borrowers to submit the payments to defendant instead of to plaintiff.

### D. Count VI: Unjust Enrichment

A party claiming unjust enrichment must show the following elements: "(1) that the defendant was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it would be unjust to allow the defendant to retain the benefit." Executive Bd. of Mo. Baptist Convention v. Windermere Baptist Conference Center, 280 S.W.3d 678, 697 (Mo. Ct. App. 2009) (citing Miller v. Horn, 254 S.W.3d 920, 924 (Mo. App. 2008)). As an equitable remedy, unjust enrichment is also discretionary and highly factual. See Miller, 254 S.W.3d at 924. While unjust enrichment is often a last resort, plaintiff can submit alternate theories of recovery supported by the same actions which allegedly give rise to its breach of contract, conversion and other claims. See Fed.R.Civ.P. 8(a)(3). The amended complaint alleges facts sufficient to establish the required elements of an unjust enrichment claim, and defendant's arguments to the contrary are unavailing.

### E. Count VII: Tortious Interference With Contract

Finally, plaintiff alleges in Count VII that defendant's actions interfered with borrowers' obligations to make installment payments under the Asbury Note. Plaintiff claims that these actions---namely issuing improper payment blockage notices and instructing borrowers to withhold payments--- constitute tortious interference with the contract between plaintiff and borrowers. Defendant argues that plaintiff's allegations

do not establish that defendant lacked the right to block borrower's installment payments on the Asbury Note. Defendant also argues that plaintiff has not alleged that the borrowers would have performed their obligations under the Asbury Note but for defendant's alleged interference.

The Court finds defendant's arguments unpersuasive. A claim for tortious interference with contract requires a showing that, "(1) a contract or valid business expectancy exists; (2) the defendant had knowledge of the contract or relationship; (3) the defendant intentionally interfered, thereby inducing or causing a breach of the contract or relationship; (4) the defendant's acts were not justified; and (5) the plaintiff suffered damages." Carter v. St. John's Reg'l Med. Ctr., 88 S.W.3d 1 (Mo. Ct. App. 2002). Plaintiff has shown that defendant's right to block borrowers' payments on the Asbury Note was conditioned upon the terms of the parties' Intercreditor Agreement. It has also sufficiently alleged that defendant acted outside its rights under the Intercreditor Agreement by directing borrowers to withhold payment when no valid payment blockage notice was in effect. Defendant's contention that plaintiff has not alleged that borrowers would have fulfilled their obligations under the Asbury Note is contradicted by plaintiff's allegations regarding correspondence from borrowers stating they were willing and able to pay but were instructed by defendant to withhold payments. Taking plaintiff's allegations as true, the Court finds that they have adequately stated a tortious interference claim.

IV. Conclusion

Plaintiff has standing and has stated an actual case and controversy in Count I of their amended complaint. Plaintiff has also alleged facts sufficient to state a claim upon which relief can be granted in Counts V, VI, and VII. However, the Court finds

that plaintiff has not alleged facts sufficient to show fraud due to a failure to disclose a material fact. Thus, Count IV of the amended complaint will be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to dismiss Counts I, V, VI, and VII of the amended complaint [Doc. #19] is **denied**.

**IT IS FURTHER ORDERED** that defendant's motion to dismiss Count IV of the amended complaint [Doc. #19] is **granted**.

**IT IS FURTHER ORDERED** that Count IV of the amended complaint is **dismissed for failure to state a claim**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of March, 2011.